FILED

May 26, 2025

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY: _____ vl
                        DEPUTY

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

MARK ANTHONY ORTEGA
                         Plaintiff,

     v.

ELITE LIVING REALTY, LLC

                   Defendant.

**Case No. SA-24-CV-00768-JKP-HJB**

## PLAINTIFF'S RESPONSE TO ORDER TO SHOW CAUSE

Plaintiff Mark Anthony Ortega ("Plaintiff") respectfully submits this Response to the Court's Memorandum Opinion and Order dated May 20, 2025 (ECF No. 13), which directed Plaintiff to show cause why this case should not be dismissed for failure to state a claim. Plaintiff believes the Original Complaint (ECF No. 1) states valid claims upon which relief can be granted. In the alternative, should the Court find deficiencies, Plaintiff respectfully moves for leave to file a First Amended Complaint, a proposed version of which can be submitted, to cure any such deficiencies.

### I. ARGUMENT

The Court's Order (ECF No. 13) identified several areas where it found the Original Complaint's pleadings insufficient. Plaintiff addresses each concern below, demonstrating that the Original Complaint, when read in the light most favorable to Plaintiff at this stage, states plausible claims for relief.

**A.  Claim under Texas Business & Commerce Code § 302.101.**

The Court found Plaintiff's allegation that Defendant "is not registered as a telemarketer in Texas" (ECF No. 1, ¶ 39), based on "information and belief," to be a conclusory allegation without

1

factual support (ECF No. 13 at 7). Plaintiff respectfully submits this allegation is factually supported and states a valid claim. Texas Business and Commerce Code § 302.101(a) explicitly prohibits a seller from making a telephone solicitation from a location in Texas or to a purchaser located in Texas unless the seller holds a registration certificate for the business location from which the solicitation is made. Plaintiff's "information and belief" is derived from a direct search of the official Texas Secretary of State's "Telemarketer Registration Search" database (https://direct.sos.state.tx.us/telephone/TelephoneSearch.asp). This search, conducted prior to filing of Plaintiff's Original Petition (ECF No. 1) and re-verified on May 25, 2025, revealed that "Elite Living Realty, LLC" still does not hold the requisite registration. The Original Complaint (ECF No. 1, ¶ 39), by alleging Defendant, a Texas LLC (ECF No 1., ¶ 12), made unsolicited telephone solicitations to Plaintiff, a Texas resident (ECF No 1., ¶ 10), without this mandatory registration, pleads a violation. This factual investigation provides the necessary support for the allegation, giving Defendant fair notice of the claim as required for sufficient pleading. In the alternative, should the Court find the Original Complaint lacks factual support, Plaintiff respectfully requests leave to amend.

**B. Claim under 47 U.S.C. § 227(c)(5) for Violations of National Do Not Call Registry Regulations (ECF No. 1, Count 1).**

The Court's Order suggests that Plaintiff's claim under 47 U.S.C. § 227(c)(5) was interpreted as being predicated solely on a violation of 47 C.F.R. § 64.1200(d)(6), relating to internal do-not-call lists (ECF No. 13 at 5). Plaintiff respectfully clarifies that Count I of the Original Complaint was intended to sufficiently plead a violation of § 227(c)(5) based on Defendant's calls to Plaintiff's telephone number which was registered on the National Do Not Call (DNC) Registry, in contravention of regulation 47 C.F.R. § 64.1200(c)(2).

The Original Complaint alleges all necessary elements for this claim: (1) Plaintiff's telephone number was registered on the National DNC Registry since on or around January 23, 2012 (ECF No. 1, ¶ 14); (2) Plaintiff never granted Defendant express consent to receive telemarketing calls (ECF No. 1, ¶ 18); and (3) Defendant initiated multiple unsolicited telemarketing text messages to Plaintiff's DNC-registered number within a 12-month period (ECF No. 1, ¶¶ 19, 20, 22, 28). Crucially, any insinuation within Defendant's automated messages (ECF No. 1, ¶ 20) that Plaintiff visited Defendant's website or otherwise initiated contact is false, as explicitly supported by Plaintiff's averment of no prior express consent (ECF No. 1, ¶ 18). Given Defendant's default in this action, these well-pleaded factual allegations, including the falsity of any claimed prior interaction initiated by Plaintiff, must be accepted as true. Plaintiff's Complaint (ECF No. 1, ¶ 28) explicitly references the TCPA's prohibition on initiating telephone solicitations to a residential telephone subscriber who has registered their number on the National DNC Registry.

Construing these specific factual allegations liberally, as required for pro se litigants, see *Tucker v. Gaddis*, 40 F.4th 289 (5th Cir. 2022), they provide a plain statement showing Plaintiff is entitled to relief under § 227(c)(5) for violations of the FCC's National DNC Registry rules. These allegations give Defendant fair notice of this distinct claim, independent of any subsequent "Stop" request. While 47 C.F.R. § 64.1200(c)(2) may not have been explicitly cited in Count I, the substantive factual averments are present to support the claim.

In the alternative, should the Court find the Original Complaint lacks the requisite specificity in linking these factual allegations to a violation of 47 C.F.R. § 64.1200(c)(2) or a similar National DNC Registry regulation as the predicate for the § 227(c)(5) claim, Plaintiff respectfully requests leave to amend.

**C.  C.F.R. § 64.1200(d)(6) (Failure to Honor Do-Not-Call Request).**

The Court expressed concern that the two text messages sent by Defendant after Plaintiff's "Stop" request on May 25, 2022 (ECF No. 1, ¶¶ 23, 24), occurred within a "reasonable time" for Defendant to honor the request (ECF No. 13 at 6). However, regulations and case law show that such opt-out requests must be honored immediately, particularly when automated systems are involved. 47 C.F.R. § 64.1200 requires that telemarketers must honor opt-out requests immediately and cease sending further messages once such a request is received. Indeed, when a recipient sends a "STOP" message, the sender must honor this request immediately and cease further communications. See *Coleman v. Rite Aid of Georgia, Inc.*, 284 F.Supp.3d 1343 (284 F. Supp. 3d 1343 (N.D. Ga. 2018).

Plaintiff's Original Complaint alleges that after he sent a clear "Stop" request on May 25, 2022, he received two additional, identical text messages from Defendant on May 25 and May 26, 2022 (ECF No. 1, ¶ 24). This continuation of messaging directly contravenes the requirement to honor the opt-out immediately. The FCC has clarified that while a single confirmatory text message sent immediately after a recipient's opt-out request is permissible, any further automated texts beyond this single confirmatory message violate the TCPA. Defendant sent two subsequent, identical, substantive marketing messages, not merely a single confirmation of opt-out.

Furthermore, the "reasonable time" provision in 47 C.F.R. § 64.1200(d)(3) does not grant marketers blanket protection for all calls or texts made within a 30-day period if compliance could have been achieved sooner. As noted in *Landsman & Funk, P.C. v. Lorman Business Center, Inc.*, Not Reported in F.Supp.2d (W.D. Wis. Mar. 9, 2009), a marketer who could comply more quickly but delays unnecessarily would still be in violation. Given that Defendant was utilizing what appeared to be an automated messaging system (ECF No. 1, ¶ 24), the expectation for processing

a "Stop" request and ceasing messages would be significantly shorter than 30 days; indeed, it should be nearly instantaneous for such systems. Sending two identical messages on the same day and the next day after a "Stop" request is not acting within the "shortest reasonable time" as suggested by cases like *Bais Yaakov of Spring Valley v. Alloy, Inc.,* 936 F.Supp.2d 272 (S.D.N.Y. 2013). The allegation that Defendant failed to cease messages immediately after the "Stop," and instead sent two further identical marketing texts, sufficiently pleads a violation of its duty under 47 C.F.R. § 64.1200(d)(6) to maintain procedures to honor such requests and to cease further communications.

In the alternative, should the Court find these allegations insufficient, Plaintiff respectfully requests leave to amend.

**D. Claim under 47 U.S.C. § 227(b)(1)(A)(iii)**

The Court found Plaintiff's allegation of ATDS use to be conclusory (ECF No. 13 at 7). However, Plaintiff respectfully contends the Original Complaint pleads sufficient facts to make a plausible inference that Defendant utilized an Automatic Telephone Dialing System (ATDS) as defined by the TCPA and interpreted by the Supreme Court in *Facebook, Inc. v. Duguid*, 592 U.S. 395 (2021), and subsequent Fifth Circuit precedent. Post-Duguid, an ATDS must have the capacity to store or produce telephone numbers using a random or sequential number generator and to dial such numbers. See *Libby v. National Republican Senatorial Committee,* 551 F.Supp.3d 724 (2021).

Plaintiff addresses the Court's observation that "as a practical matter, Defendant did not use any artificial or prerecorded voice, because the nature of the communications was textual in nature. Perhaps Plaintiff meant to allege use of an automatic dialing system..." (ECF No. 13 at 7). Plaintiff clarifies that the primary claim under § 227(b)(1)(A)(iii) is indeed the use of an ATDS to send the text messages, not the use of an audible artificial or prerecorded voice. The TCPA prohibits making

any call, a term widely held to include text messages, using either an ATDS or an artificial or prerecorded voice. The allegation here focuses on the system's capacity for automated dialing as defined, irrespective of whether an audible voice was involved, as the communications were textual.

Because plaintiffs face difficulty in knowing the type of calling system used without the benefit of discovery, plaintiffs can plausibly plead the use of an ATDS by alleging facts that indirectly suggest that such a device was used. See *Horton v. Tex. Fed. for Children PAC, Inc.*, 2023 WL 3136422, at *4 (N.D. Tex. April 27, 2023).  For example, in cases involving allegedly unlawful text messages, "plaintiffs might rely on the content of the message, the context in which it was received, and the existence of similar messages to raise an inference that an ATDS was used." *Id*. (internal quotations omitted). See *Horton v. MultiPlan Inc.*, No. 3:23-CV-02098-S-BT, 2024 WL 3380236, at *6 (N.D. Tex. June 7, 2024), R&R adopted. Plaintiff's Original Complaint alleges several such indirect factual indicators such as the unsolicited nature of the multiple messages (ECF No. 1, ¶¶ 19, 20); the lack of any prior express consent (ECF No. 1, ¶ 18), which negates any targeted, individualized communication stemming from an existing relationship; and most significantly, the allegation that the final two messages received after Plaintiff's "Stop" request were "completely identical in content," strongly suggesting they were automatically generated rather than individually typed (ECF No. 1, ¶ 24). The generic content and identical repetition of messages are precisely the types of allegations that can support a plausible ATDS claim, as seen in *Libby*, where generic, pre-written messages supported the inference. The impersonal and automated nature of the messages alleged by Plaintiff aligns with circumstances where courts find ATDS use plausible. See *Horton v. MultiPlan Inc*., 2024 WL 3380236 (2024).

This information asymmetry is exacerbated by Defendant's active choice to not participate in this lawsuit. Defendant was served on July 23, 2024 (ECF No. 6). Despite Plaintiff granting, at the Defendant's request, an informal two week extension to answer until August 27, 2024, Defendant failed to appear, plead, or otherwise defend. Consequently, a Clerk's Entry of Default was entered on September 13, 2024 (ECF No. 9). Defendant's default means Plaintiff has been deprived of the opportunity for discovery to ascertain the specific systems Defendant employed. To require Plaintiff to plead with granular detail about Defendant's unknown internal systems, when Defendant itself has obstructed the means to obtain such information by defaulting, would effectively reward non-responsive defendants and render ATDS claims impossible to plead successfully against them.

Given Defendant's default, Plaintiff's well-pleaded factual allegations, including those describing the automated characteristics of the messages and the lack of consent, must be taken as true. These facts, considered together, create a plausible inference that Defendant employed a system with the requisite ATDS capabilities.

In the alternative, should the Court deem these allegations insufficient, Plaintiff respectfully requests leave to amend.

**E. Basis for Treble Damages**

The Original Complaint (ECF No. 1) provides a sufficient basis for treble damages by alleging Defendant willfully or knowingly violated the TCPA. A violation is willful or knowing if the defendant's act was intentional or volitional, not necessarily requiring specific knowledge that the action constituted a TCPA violation. See *Hossfeld v. Allstate Ins. Co.,* 726 F. Supp. 3d 852 (N.D. Ill. 2024). Plaintiff pleaded his number was on the National Do Not Call (DNC) Registry for over a decade (ECF No. 1, ¶ 14) and that he never granted Defendant express consent to receive

telemarketing calls (ECF No. 1, ¶ 18). As established in cases like *Fridline v. Millennia Tax Relief, LLC,* 727 F. Supp. 3d 517 (M.D. Pa. 2024), and *Dobronski v. Tobias & Associates, Inc.,* No. 23-10331, 2025 WL 747867 (E.D. Mich. Mar. 7, 2025), allegations that a defendant contacted a number on the DNC registry without valid express written consent are sufficient to show willful or knowing conduct. Defendant's volitional act of sending multiple text messages to Plaintiff's DNC-registered number without consent, and continuing to do so even after an explicit "Stop" request (ECF No. 1, ¶¶ 23, 24), demonstrates such intentional conduct. Furthermore, the failure to register as a telemarketer in Texas (ECF No. 1, ¶ 39), demonstrates a broader disregard for telemarketing laws. The Defendant contacted Plaintiff without scrubbing their contact list against the DNC registry as in *Shelton v. Fast Advance Funding, LLC,* 378 F. Supp. 3d 356 (E.D. Pa. 2019), affirmed, 805 Fed. Appx. 156 (3d Cir. 2020) in which the Defendant was found willful for not scrubbing their contact list against the DNC registry. These collective allegations support a claim for willful or knowing violations, justifying treble damages.

## II. IN THE ALTERNATIVE MOTION FOR LEAVE TO FILE AMENDED COMPLAINT

Should this Court determine that the Original Complaint, despite the arguments above, remains deficient in any respect, Plaintiff respectfully requests leave to file a First Amended Complaint pursuant to Federal Rule of Civil Procedure 15(a)(2). Rule 15(a)(2) provides that courts "should freely give leave when justice so requires."

Plaintiff is prepared to submit a First Amended Complaint that would (1) Explicitly detail the factual basis for the Texas telemarketer non-registration claim, including dates of database searches and the specific database utilized; (2) Provide further factual allegations regarding the characteristics of the text messages received to bolster the inference of ATDS use, consistent with prevailing case law; (3) Clarify the timeline of violations in relation to the National DNC Registry

and Plaintiff's "Stop" request to further delineate the distinct violations; and (4) Incorporate any other clarifications the Court deems necessary.

Leave to amend would serve the interests of justice, as Plaintiff's claims are substantive and based on statutory rights. Defendant has not yet appeared in this action and therefore would suffer no prejudice from an amendment at this stage. An amendment would not be futile, as it would directly address the Court's expressed concerns.

### III. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court find the Original Complaint (ECF No. 1) sufficient to state claims upon which relief can be granted and allow the case to proceed. In the alternative, Plaintiff respectfully requests that the Court grant leave to file a First Amended Complaint to cure any perceived deficiencies.

Dated: May 26, 2025                                    Respectfully submitted,

*/s/ Mark Anthony Ortega*
Mark Anthony Ortega
Plaintiff, Pro Se
mortega@utexas.edu
PO Box 702099
San Antonio, TX 78270
Telephone: (210) 744-9663

**CERTIFICATE OF SERVICE**

I hereby certify that on May 26, 2025, served a true and correct copy of this document on the parties and/or attorneys of record via the Court's case filing system and first class mail to the following:

DFW Elite Living , LLC
c/o/ Elite Living Realty, LLC
13155 Noel Rd #900
Dallas, TX 75240

/s/ Mark Anthony Ortega
Mark Anthony Ortega

10